

**ORDERED in the Southern District of Florida on January 8, 2014.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                              Chapter 7

WALTER SCHURTENBERGER,                              Case No. 12-17246-BKC-AJC

      Debtor.
_____/
CAT CHARTER LLC, DANIEL                             Adv. No. 12-1752-BKC-AJC-A
RYAN and PATRICIA RYAN,

      Plaintiffs,

vs.

WALTER SCHURTENBERGER,

      Defendant.
_____/


## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING CROSS-MOTION FOR SUMMARY JUDGMENT

THIS MATTER came before the Court for hearing upon the Motion for Summary Judgment [ECF No. 8] (the "Motion") filed by Plaintiffs, Cat Charter LLC, Daniel Ryan and Patricia Ryan (the "Ryans" and, collectively with Cat Charter, the "Plaintiffs"), the Debtor

Walter Schurtenberger's Response in Opposition to the Motion and Cross-Motion for Summary Judgment [ECF No. 20] (the "Response") and Affidavit in Support of the Response [ECF No. 19] (the "Affidavit"). The Court, having reviewed the Motion, the Response, the Affidavit and the volumes of transcripts from the Arbitration hearing filed in this matter [ECF Nos. 13-18, 21 and 22], having considered the Award of Arbitrators and the Final Judgment of the United States District Court, as well as the parties' post-hearing submissions including the Debtor's Supplemental Authority [ECF No. 41], the Motion is **DENIED** and the Cross-Motion is **GRANTED** for the reasons stated herein.

## I.  BACKGROUND

The Plaintiffs filed a Complaint Objecting to Dischargeability [ECF No. 1] (the "Complaint") of a $2,963,391.97 judgment debt (the "Debt") against the Debtor. The Debt resulted from a pre-petition arbitration award pursuant to the Plaintiffs' Amended Statement of Claim, in which the Plaintiffs asserted six separate claims against the Debtor and his boat-building company Multihull Technologies, Inc. (collectively, the "Defendants"): (1) deceptive and unfair trade practices under Fla. Stat. § 501.201 *et seq.;* (2) rescission; (3) breach of contract; (4) fraud or alternative misrepresentation; (5) breach of fiduciary duty; and (6) civil remedy for criminal practices under Florida law. Answer at ¶ 31.[1]

The arbitration proceeded under the Commercial Arbitration Rules of the AAA before a three-member panel (the "Panel"). Answer at ¶ 33. The Panel heard testimony from expert and fact witnesses, including the Debtor, and reviewed extensive documentary evidence from both sides during a five-day trial. Following post-trial briefing, on December 7, 2009, the Panel issued an award in favor of Plaintiffs (the "Award"). *Id.* By the Award, the Panel found that the Plaintiffs herein had proven their claim against the Debtor, and Multihull, for violation of the

---

[1] Answer ¶ No. will refer to paragraphs in the Debtor's Answer and Affirmative Defenses [ECF No. 6].

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") by the greater weight of the evidence and that the Plaintiffs had proven its claim against Multihull for breach of contract by the greater weight of the evidence.  Award at ¶ 2.  The Award denied all other claims of the Plaintiffs, as well as all counter-claims by Defendants. Award at ¶ 3.

Instead of entering a judgment on the Award, the District Court vacated the Award, finding that the Panel failed to provide a "reasoned" award, as required by the parties arbitration agreement, such that the Award exceeded the power of the Panel.  *See Cat Charter, LLC v. Schurtenberger*, 691 F.Supp.2d 1339, 1344 (S.D. Fla. 2010).  However, the District Court ruling was reversed on appeal by the Eleventh Circuit Court of Appeals, *see Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836 (11th Cir 2011).  The Eleventh Circuit held that the arbitrators sufficiently explained the basis for their decision and did not exceed their authority by failing to provide a "reasoned award." *Id.*[2]  The Eleventh Circuit concluded that the arbitrators' decision

---

[2] Explaining what constitutes a reasoned award, the Eleventh Circuit held that the Award survived scrutiny.

**Error! Main Document Only.**    Determining whether an award is reasoned first requires some context. Generally, an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may conclude a ''standard award'' and simply announce a result. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."). At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make "findings of fact and conclusions of law," a relatively exacting standard familiar to the federal courts. *See, e.g., ARCH Dev. Corp. v. Biomet, Inc.,* No. 02 C 9013, 2003 WL 21697742, at *4 (N.D.Ill. July 30, 2003).

Logically, the varying forms of awards may be considered along a "spectrum of increasingly reasoned awards," with a "standard award" requiring the least explanation and "findings of fact and conclusions of law" requiring the most. *Id.* In this light, therefore, a "reasoned award is something short of findings and conclusions but more than a simple result." *Sarofim v. Trust Co. of the W.,* 440 F.3d 213, 215 n. 1 (5th Cir.2006) (citations and internal quotation marks omitted).

Our recognition of this spectrum, however, is still insufficient to fully evaluate the Award as handed down by the Panel. We thus require further guidance regarding the key term. Webster's defines "reasoned" as "based on or marked by reasoning," and "provided with or marked by the detailed listing or mention of reasons." Webster's Third New Int'l Dictionary: Unabridged 1892 (1993). Relatedly, "reason" — as used in this context — is defined as "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure." *Id.* at 1891. Strictly speaking, then, a "reasoned" award is an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of an act — the "act" here being, of course, the decision of the Panel.

was based "primarily upon credibility determinations made by the Panel." *Schurtenberger*, 646 F.3d at 844.

> Either the transaction proceeded along the lines of a duly executed contract — the Defendants' story — or the transaction surrounding construction of the *Magic* was punctuated by misrepresentations and dubious behavior on the Defendants' part — the Plaintiffs' story. The statement that "[o]n the claim of the Claimants … for breach of contract … we find that Claimant … has proven its claim against MTI by the greater weight of the evidence" is easily understood to mean that, in the swearing match between the Plaintiffs and the Defendants, the Panel found the Plaintiffs' witnesses to be more credible. We certainly cannot say that this statement is devoid of any statements offered as a justification; the reason for the Plaintiffs' victory is plainly provided.  *Id*.

While recognizing the statements in the Award are greater than what is required in a "standard award," the Eleventh Circuit also recognized that the Panel "could have provided more." *Id*. at 845.  In fact, the Court noted that, "had the parties wished for a greater explanation, they could have requested that the Panel provide findings of fact and conclusions of law."  The Eleventh Circuit Court of Appeals even noted that, prior to their request for a reasoned award, the parties contemplated requesting a more detailed opinion from the Panel. *Id*. at fn15.  "In an email exchange, an attorney for the Defendants stated a preference for 'an award including findings of fact and conclusions of law.' Notably, in response, an attorney for the Plaintiffs explained, 'I don't want to ask them to do voluminous findings, I think a paragraph would be sufficient and more consistent with the nature of arbitration.'  This exchange reveals that the parties knew full well that they could request the Panel to produce 'findings of fact and conclusions of law' but consciously opted for a less-demanding standard."

On September 20, 2011, the District Court confirmed the Award on remand from the Eleventh Circuit.  Answer at ¶¶ 36-38.  No further findings were made.

As damages under FDUTPA and/or for breach of contract, the Panel entered an award for Plaintiffs against the Debtor and Multihull, jointly and severally, in the sum of $1,934,544.00 for

the principal paid towards construction and purchase of the catamaran, plus $67,380.00 for additional damages, with interest accruing on the damages award at the statutory rate from July 31, 2008. Award at ¶ 7.  As previously stated, the Award denied relief for all other claims of Plaintiffs, as well as all counter-claims by Defendants. Award at ¶ 3.  The arbitrators awarded Plaintiffs the full compensatory damages as well as costs and fees sought, but denied treble damages and punitive damages.

By their Motion, the Plaintiffs now seek a determination that the Debt was obtained by the Debtor through false pretenses, false representations or actual fraud and therefore is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  According to the Motion, the issues necessary to prove the non-dischargeability of the Debt under section 523(a)(2)(A) have already been litigated and decided by the Panel in favor of the Plaintiffs.  As a result, the Plaintiffs' assert that the doctrine of collateral estoppel precludes the Debtor from re-litigating those issues.

The Debtor appears to agree that collateral estoppel applies but argues that it is the Plaintiffs who have failed to prove fraud necessary to except the judgment debt from discharge and they are therefore collaterally estopped from seeking the non-dischargeability of its debt for fraud under section 523(a)(2)(A).  The Debtor asserts that, because the Plaintiffs had the opportunity, and in fact sought judgment for fraud but failed to prove it, then collateral estoppel precludes Plaintiffs from trying the fraud claim again in this Court under section 523(a)(2)(A).

## II.  CONCLUSIONS OF LAW

### Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine 'issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *Rice v. Braniger Organization, Inc.*, 922 F.2d 788 (11th Cir. 1991); *In re Pierre*, 198 B.R. 389 (Bankr. S.D.Fla. 1996). Rule 56 is based upon the principle that if the Court is made aware of the absence of any genuine issues of material fact, it should, on motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *U.S. v. Feinstein*, 717 F.Supp. 1552 (S.D. Fla. 1989). Rule 56 is incorporated within Federal Rule of Bankruptcy Procedure 7056.

"Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). The legal principle concerning the standard governing the issuance of summary judgment has been articulated by the United States Supreme Court in *Celotex* and *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 106 S.Ct. 2505 (1986).

In *Celotex*, and *Anderson*, the Supreme Court focused on the question of what constitutes a genuine issue of material fact within the meaning of Rule 56. The principal effect of these decisions is the express adoption of a standard that when the moving party is able to demonstrate that the non-moving party has insufficient evidence of any element that is essential to its case, the moving party is entitled to judgment as a matter of law. In *Celotex*, the Court held that the moving party may satisfy the burden imposed by Rule 56 in two ways: the moving party may submit affidavit evidence that negates an essential element of the non-moving party's claim and/or the moving party may demonstrate that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Id*. at 328.

In *Anderson*, the Court stated that the standard for summary judgment mirrors the standard for a directed verdict under Rule 50(a), Fed.R.Civ.P., which provides that the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. *Id*. at 250. Essentially, the question is whether "the evidence present[s] sufficient factual disagreement to require submission to the fact-finder or is the controversy so one-sided that one party must prevail as a matter of law." *Id*.

To defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *Id*. Rule 56, Fed.R.Civ.P., must be construed not only with regard to persons asserting claims, but also with regard to the rights of persons opposing such claims to demonstrate that the claims have no factual basis. *Id*. "The mere existence of a scintilla of evidence in support of the [opposing party's] position will not be sufficient to forestall [the entry of summary judgment]." *Anderson* at 252. Thus, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to defeat the motion for summary judgment. *First National Bank of Arizona v. Cities Service Co*., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968); *Resolution Trust Corporation by the FDIC v. Clark*, 741 F.Supp. 896 (S.D.Fla. 1990); *In re Pierre*, 198 B.R. 389 (Bankr. S.D.Fla. 1996).

## Collateral Estoppel

"The doctrine of collateral estoppel or issue preclusion is designed to ensure the finality of factual or legal conclusions reached ... in formulating a final judgment." *P & S X-ray Co. v. Dawes (In re Dawes)*, 1995 WL 461880 *5 (Bankr. N.D. Ill. 1995); *see also Schlenkerman v. Goldbronn (In re Goldbronn)*, 263 B.R. 347, 359 (Bankr. M.D. Fla. 2001). "Collateral estoppel

prohibits litigants from resurrecting factual and legal issues that were litigated and resolved." *Id.* The Eleventh Circuit has established as prerequisites to the application of collateral estoppel three prongs: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment of that earlier action." *Greenblatt v. Drexel Burnham Lambert, Inc*., 763 F.2d 1352, 1360 (11th Cir. 1985). "In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.*

It is well settled that an arbitration award can have collateral estoppel effect. *Id.*, *see also Pollock v. Marx, (In re Marx)*, 171 B.R. 218, 221-22 (Bankr. N.D. Tex. 1994) (arbitral findings may be given preclusive effect). Moreover, the lack of factual findings in an arbitration award may not be fatal to its use for collateral estoppel purposes, where the court may infer facts for purposes of collateral estoppel if "the finding is necessarily implied from the nature of the claim and award." *Owens v. Miller (In re Miller)*, 240 B.R. 566, 573 (Bankr. W.D.Mo. 1999); *see, e.g.*, *O'Brien v. Zangara (In re Zangara)*, 217 B.R. 26, 29 (Bankr. E.D.N.Y. 1998); *Tamari v. Bache & Co*., 637 F.Supp. 1333, 1336-37 (N.D. Ill. 1986) ("[w]hen the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered 'determined' by the factfinder, even if no explicit finding of that issue has been made.").

The Plaintiffs contend this case is similar to *Zangara, supra*, and supports their claim for non-dischargeability. The Court disagrees. In *Zangara*, an investor brought an arbitration proceeding against the debtor asserting that the debtor made unauthorized trades in violation of federal and Texas law. The arbitration panel there issued an award in favor of the investor,

*delineating three Texas fraud statutes* which served as the basis for its award, but did not issue specific findings of fact or its reasoning.  *Id.* at 29 (emphasis added).  The *Zangara* court noted that 'the absence of specific factual findings and reasoning is counterbalanced by the fact that arbitrators have clearly enunciated the statutory basis for the [a]ward...'"  *Id.*  The debtor later filed for bankruptcy and the investor commenced a non-dischargeability action against the debtor. *Id.* at 28.  The bankruptcy court held that after a thorough review of the elements required under both the Texas fraud statute and section 523(a)(2)(A), the arbitration proceeding decided an issue identical to that posed by a section 523(a)(2)(A) cause of action and found that summary judgment was appropriate."  *Id.  See also, In re Gelinas*, 2007 WL 1184075 at *5 (Bankr. S.D. Fla. 2007)

In this case, however, the statutory basis upon which the Plaintiffs' judgment is premised, FDUTPA, is not rooted in fraud.  The elements required to prove a claim under FDUTPA do not meet the requirements for non-dischargeability under 11 U.S.C. §523(a)(2)(A).  The Panel did not make specific factual findings in the Award, and the Award is ambiguous as to whether it is based on fraud.  In fact, the Court believes that if fraud had been proven, the Panel would have found for Plaintiffs on their claim for fraud, but it specifically did not do so.  It also did not award treble or punitive damages for willful misconduct, and awarded no civil remedy for alleged criminal practices.  The Court believes the Panel's decision not to find fraud collaterally estops this Court from finding fraud to support a judgment of non-dischargeability.

Plaintiffs urge the Court to make findings, from a review of the voluminous transcripts of the 5-day arbitration, and to conclude there are no issues of material fact which preclude entry of summary judgment based on fraudulent representations, false pretenses or actual fraud, as defined by 11 U.S.C. § 523(a)(2)(A).  The Court believes that if the arbitrators did not find fraud

based upon the trial testimony, as is evident by the Panel's Award against the Debtor based solely on FDUTPA, then this Court is estopped from so finding based on the same testimony. Even if this Court considered the testimony, it is inconclusive on a motion for summary judgment.  The Court does not make findings of fact upon a summary judgment motion and the testimony itself does not persuade the Court that fraud was a basis for the FDUTPA Award, notwithstanding the statement by the Eleventh Circuit that the Panel believed the transaction between the parties was "punctuated by misrepresentations and dubious behavior on the Defendants' part."  There are no findings of fact regarding the requisite intent and reliance necessary to prove a fraud claim under 11 U.S.C. § 523(a)(2)(A).  Moreover, this Court has no way of assessing the credibility of the witnesses and the nuances of their testimony to find fraud, especially where the Panel had that opportunity to assess the witnesses' credibility but still found no fraud.

Thus, while the elements necessary to prove a § 523(a)(2)(A) claim were presented, addressed by the Panel, and actually litigated, the Panel did not ultimately determine that fraud was the basis for liability.  The Panel found only that the Debtor violated FDUTPA.  And while fraud could support liability under FDUTPA, in this case the theory of fraud was rejected by the Panel through its Award.

A finding of "deception" under FDUTPA does not constitute fraud under § 523(a)(2)(A). Deception pursuant to FDUTPA is defined as "…an objective standard based upon the probable impact on the average consumer and not upon the subjective intent of the seller.  Thus, it is not necessary to prove any bad intent or motive on the part of the seller in order to establish unlawful deception."  *Samuels v. American Legal Clinic (In re Samuels)*, 176 B.R. 616 (Bankr. M.D.Fla. 1994).  There is a critical difference between a deceptive trade practice claim and a fraud claim.

*Davis v. Powertel Inc.*, 776 So.2d 971 (Fla. 1<sup>st</sup>DCA  2000).  "A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."  *Id*. This objective standard adopted by Florida courts in actions under FDUTPA, does not require subjective evidence of reliance, as would be the case with common law fraud which is the basis of a section 523(a)(2)(A) claim.  *Davis*, 776 So.2d 974.  Under FDUTPA, a plaintiff does not need to prove fraud because the action does not depend on a plaintiff's actual reliance on the deceptive trade practice, or the seller's intent to deceive, but rather whether the practice was likely to deceive a consumer acting reasonable in the same circumstance.  *Id*.

Collateral estoppel applies if it can be shown that the elements underlying non-dischargeability under § 523(a)(2)(A) are identical, were actually litigated and were necessary to the finding of a violation of FDUTPA in the Award.  However, under the circumstances herein, while the fraud claim tried before the Panel is identical to the fraud claim under section 523(a)(2), and while that claim was actually litigated, fraud was not necessary to the Panel's finding a violation of FDUTPA. In fact, the fraud claim was denied by the Panel.

### A.  The issue at stake is identical to the one involved in the arbitration

#### i.   The testimony at arbitration does not prove the elements of § 523(a)(2)(A)

For a creditor to demonstrate that a claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), a plaintiff must demonstrate by a preponderance of the evidence that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *In re Bilzerian,* 153 F.3d 1278, 291 (11th Cir.1998).  Although the Panel viewed the evidence presented at arbitration as demonstrating that the Debtor made false representations, *Schurtenberger*, 646 F.3d at 844, there is no finding that the Debtor intended to

deceive the Plaintiffs or that the Plaintiffs justifiably relied upon those representations.  If the requisite intent and reliance had been proven, the Panel would have found for Plaintiffs on their claim for fraud, not solely for violations of FDUTPA.

      ii.   The violation of FDUTPA does not meet the requirements of § 523(a)(2)(A)

The Award found the Debtor liable for a violation of FDUTPA.  A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *City First Mortgage Corp. v. Barton,* 988 So.2d 82, 86 (Fla. 4th DCA 2008) *quoting Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006).  An unfair practice is one that "offends established public policy" and one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v Beacon Property Management, Inc*., 842 So.2d 773, 777 (Fla. 2003*); see also Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.,* 761 So.2d 1256, 1263 (Fla. 3d DCA 2000) (deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment).  "A deceptive practice is one that is 'likely to mislead' consumers." *Rebman v Follett*, 575 F.Supp.2d 1272, 1279 (M.D.Fla. 2008) *quoting Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 1st DCA 2000).

The FDUTPA violation by the Debtor is not identical to the § 523(a)(2)(A) elements necessary to prove non-dischargeability.  Plaintiffs rely on *In re David*, 2008 WL 2222069 (Bankr. S.D. Fla. 2008) to support the contrary conclusion.  However, the Court finds reliance on *David* is misplaced.  In the case *sub judice*, fraud was raised before the arbitrators and tried but the Panel did not find fraud.  While the Court agrees with Judge Isicoff that a previous finding of a violation of FDUTPA could be used to support a finding that a debt is non-dischargeable under 523(a)(2)(A), the record in this case does not support such a finding.  The FDUTPA violation by

the Debtor herein did not constitute fraud, fraudulent representation or fraudulent pretenses under section 523(a)(2)(A) as the Panel specifically did not Award damages based on that claim. The jury award in the *David* case was unclear, so Judge Isicoff reviewed the evidence from the state court trial to determine if it supported a finding that any of the acts complained of constituted fraud, false pretenses or a fraudulent representation upon which the creditor justifiably relied.  Judge Isicoff concluded the debtor's behavior was deceptive, inappropriate and inexcusable; however, she further stated that "inappropriate, inexcusable, and sometimes even, deceptive, do not equate to non-dischargeable." *David*, 2008 WL 2222069 at *13.

So too in this case the Court believes that however inappropriate, inexcusable, and deceptive the Debtor's conduct was to violate FDUTPA, such conduct did not rise to the level of fraud so as to be non-dischargeable under 523(a)(2)(A).  If it had, an award would have been entered in favor of the Plaintiffs on the fraud claim.  In the present case, FDUTPA was not the only claim litigated between the parties.  Fraud was asserted and tried, but apparently rejected. Thus, while the Debtor's misrepresentations caused the Ryans to suffer actual damages, as identified in the Award, those misrepresentations did not rise to the level of fraud as the Panel found no fraud.

The issues at stake in this Complaint have already been litigated and determined at arbitration.  Those issues were actually litigated during the 5-day arbitration hearing and they were a necessary part of the arbitration award.  The Panel found for Plaintiffs on the claim for violation of FDUTPA based upon misrepresentations, but did not find that such misrepresentations rose to the level of fraud as the Panel denied Plaintiffs' claim for fraud.  The arbitration award collaterally estops the Plaintiffs and the Debtor from re-litigating these issues.

### B.  The issue was actually litigated in the prior litigation

Courts have held that "actually litigated" in the context of collateral estoppel "only contemplates that the defendant has been given a full opportunity to defend himself." *In re Seifert*, 130 B.R. 607, 609 (Bankr. M.D.Fla. 1991).  "In general, an issue is actually litigated when it is properly raised by the pleadings or otherwise, is submitted for determination and is determined." *Goldbronn*, 263 B.R. at 363 (Bankr. M.D.Fla. 2001) (where arbitration took place over two days, both sides were represented by counsel and vigorously advocated their positions, and arbitration panel clearly adjudicated the issue, the issue was actually litigated.).

Here, the three person arbitration panel conducted a full evidentiary hearing over five days, in which the Plaintiffs and the Debtor were each represented by counsel, both sides put on evidence in support of their positions and filed post-trial briefs with the panel.  The Panel found misrepresentations by the Debtor which induced Plaintiffs to pay Debtor for construction of a vessel, however the Panel found such misrepresentations were only a violation of FDUTPA.  The Panel did not find liability for fraud, even though the claims were presented.  No justifiable reliance or intent to deceive having been found by the Panel upon presentation of the evidence, this Court is collaterally estopped from finding same based upon the same record.

### C.  The determination of misrepresentation in the arbitration was a critical and necessary part of the Award

To support its claim for fraud under section 523(a)(2)(A), the Plaintiffs rely on the language in the Eleventh Circuit Court of Appeal opinion wherein the Court states that the Panel's ruling turned on whether the panel believed "the transaction proceeded along the lines of a duly executed contract – the Defendants' story – or the transaction surrounding construction of the *Magic* was punctuated by misrepresentations and dubious behavior on the Defendants' part – the Plaintiffs' story." *Cat Charter, LLC, et al. v. Walter Schurtenberger, et al*., 646 F.3d at 844.

The Eleventh Circuit found it clear from the arbitration panel's Award that it believed that the Debtor's misrepresentations and dubious behavior caused the Plaintiffs to incur the Debt.  It was this finding that led to the arbitration panel's ruling that the Debtor's actions were a violation of FDUTPA and which formed the basis for the Award and ultimately the Final Judgment.  This finding however, does not prove Plaintiffs' case for non-dischargeability.  The Panel did not find that such misrepresentations amounted to fraud and so did not enter an award based on fraud.  The Panel rejected the claim of fraud.  The Plaintiffs having proven that misrepresentations occurred, but having failed to prove all the requisite elements of fraud, including the intent of Debtor regarding his misrepresentations and justifiable reliance by the Plaintiffs, the Panel denied relief to the Plaintiffs based upon fraud, and entered an Award based on FDUTPA and the objective standard of proof applicable thereunder.

While the Court is sympathetic to the Plaintiffs' position, the Court believes the Debtor is nonetheless entitled to a fair application of the law.  Accordingly, all three elements necessary for collateral estoppel being present here, it is

ORDERED AND ADJUDGED that Plaintiffs' Motion is **DENIED** and the Defendant's Cross-Motion is **GRANTED**.    Summary Final Judgment is entered in favor of the Debtor/Defendant and the Debt is deemed dischargeable, pursuant to 11 U.S.C. §523(a)(2)(A).

###

Copies furnished to:

Kevin Gleason, Esq.
Jeffrey Bast, Esq.

*Attorney Bast is directed to serve a copy of this order on all interested parties and to file a certificate of service reflecting same.*